**CASE NO. 19-1026**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JONELLA TESONE,     )
          )
  Plaintiff-Appellant,   )
          )
 v.         )
          )
EMPIRE MARKETING STRATEGIES, )
          )
          )
  Defendant-Appellee.  )

---

On Appeal from the United States District Court
For the District of Colorado
The Honorable Judge Michael E. Hegarty
D.C. No. 1:17-CV-02101-MEH-KLM

---

**APPELLANT'S OPENING BRIEF**

---

Respectfully submitted,

Joseph A. Whitcomb, Esq.
LaQunya L. Baker, Esq.
Whitcomb, Selinsky, McAuliffe, PC.
2000 S. Colorado Blvd
Tower 1, Suite 9500
Denver, CO 80222
(303)534-1958
laqunya@wsmlawpc.com

Pursuant to Rule 28.2(C)(2), Plaintiff requests oral argument

# Table of Contents

TABLE OF AUTHORITIES ....................................................................................... iii

PRIOR OR RELATED APPEALS ............................................................................. vi

JURISDICTIONAL STATEMENT ............................................................................. 1

STATEMENT OF ERRORS ....................................................................................... 2

ISSUES PRESENTED ................................................................................................. 3

STANDARD OF REVIEW ......................................................................................... 4

   STATEMENT OF THE CASE .............................................................................. 5

SUMMARY OF THE ARGUMENTS ....................................................................... 8

   ARGUMENTS ..................................................................................................... 10

   WHETHER THE COURT ERRED IN ITS JANUARY 17, 2019, DECISION STATING THAT THE PLAINTIFF WILL NOT BE ABLE TO DEMONSTRATE AT TRIAL THAT SHE IS DISABLED AS DEFINED BY THE AMERICANS WITH DISABILITIES ACT .................... 10

   WHETHER THE DISTRICT COURT ERRED IN ITS JANUARY 17, 2019, ORDER DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED PLEADING AND AMEND THE SCHEDULING ORDER ................................................................................. 20

   THE DISTRICT COURT ERRED IN DENYING MS. TESONE'S REQUEST TO AMEND THE SCHEDULING ORDER TO EXTEND THE DEADLINE TO ENDORSE AN EXPERT WITNESS. ....................................................................................................... 32

CONCLUSION AND PRAYER FOR RELIEF ........................................................ 34

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ........................................ 35

CERTIFICATE OF DIGITAL SUBMISSIONS AND PRIVACY REDACTIONS ...................... 36

 U.S. Magistrate Michael Hegarty's Order on Motion to Amend/Correct/Modify ........................................................................................... 38

U.S. Magistrate Michael Hegarty's Order on Motion for Summary Judgment ......................................................................................................... 45

# TABLE OF AUTHORITIES

Page(s)

Cases

Adair v. City of Muskogee,
   823 F.3d 1297 (10th Cir. 2016) ....................................................15, 16, 17, 20

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)................................10

Arbaugh v. Y&H Corp.,
   546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) ............................29

Arkansas-Platte & Gulf P'ship v. Dow Chem. Co.,
   886 F. Supp. 762 (D. Colo. 1995)...................................................................26

Bauchman for Bauchman v. W. High Sch.,
   132 F.3d 542 (10th Cir. 1997) .....................................................................4, 5

Birch v. Polaris Indus., Inc.,
   812 F.3d 1238 (10th Cir. 2015) .......................................................................25

Carbajal v. St. Anthony Cen. Hosp. No. 12-cv-02257-REB-KLM,
   2015 WL 149984 (D. Colo. Mar. 27, 2015) ...................................................21

Celotex Corp. v. Catrett,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)................................10

Colorado Visionary Acad. v. Medtronic, Inc.,
   194 F.R.D. 684 (D. Colo. 2000) .....................................................................21

E.E.O.C. v. C.R. England, Inc.,
   644 F.3d 1028 (10th Cir. 2011) .......................................................................11

El Encanto, Inc. v. Hatch Chile Co., Inc.,
   825 F.3d 1161 (10th Cir. 2016) .....................................................................5, 6

F.D.I.C. v. Oldenburg,
   34 F.3d 1529 (10th Cir. 1994) ..........................................................................4

Falls Indus., Inc. v. Consol. Chem. Indus., Inc.,
   258 F.2d 277 (5th Cir. 1958) ..........................................................................27

Felkins v. City of Lakewood,
   774 F.3d 647 (10th Cir. 2014) ............................................................11, 19, 20

Harris v. FedEx Nat. LTL, Inc.,
   760 F.3d 780 (8th Cir. 2014) ..........................................................................22

Hayes v. Harvey,
   903 F.3d 32 (3d Cir. 2018) ..............................................................................14

Hazen Paper Co. v. Biggins,
   507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)...............................11

Hom v. Squire,
   81 F.3d 969 (10th Cir. 1996) ............................................................................4

Jakomas v. City of Pittsburgh,
   342 F. Supp. 3d 632 (W.D. Pa. 2018) .................................................13, 14, 15

Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.,
   175 F.3d 848 (10th Cir. 1999) ....................................................................4, 28
Kelly v. Drexel Univ.,
   94 F.3d 102 (3d Cir. 1996) .......................................................................13, 14
Lariviere, Grubman & Payne, LLP v. Phillips,
   No. 07-CV-01723-WYD-CBS, 2010 WL 2844361 (D. Colo. July 15, 2010) ......24, 25, 26
Leary v. Daeschner,
   349 F.3d 888 (6th Cir. 2003) ................................................................22, 23, 24
Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC,
   300 F.R.D. 678 (D. Colo. 2014) ......................................................................21
Lincoln v. BNSF Ry. Co.,
   900 F.3d 1166 (10th Cir. 2018) .....................................................29, 30, 31, 33
MacKenzie v. City & Cty. of Denver,
   414 F.3d 1266 (10th Cir. 2005) ......................................................................29
McDonnell Douglas Corp. v. Green,
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)......................................11
Mellon Bank, N.A. v. Gen. Elec. Credit Corp.,
   724 F. Supp. 360 (W.D. Pa. 1989)...................................................................27
Minter v. Prime Equip. Co.,
   451 F.3d 1196 (10th Cir. 2006) ......................................................................28
Nicastle v. Adams Cty. Sheriff's Office, No. 10-CV-00816-REB-KMT,
   2011 WL 1465586 (D. Colo. Mar. 14, 2011) ...................................................21
Sampson v. Civiletti,
   632 F.2d 860 (10th Cir. 1980) .......................................................................28
Sandifer v. Green,
   57 F. App'x 857 (10th Cir. 2003).......................................................................4
Scheidecker v. Arvig Enterprises, Inc.,
   193 F.R.D. 630 (D. Minn. 2000) .....................................................................25
Wolski v. City of Erie,
   900 F. Supp. 2d 553 (W.D. Pa. 2012) .................................................11, 12, 13

Statutes

28 U.S.C.A. § 1291 (West) ..................................................................................1
28 U.S.C.A. § 1331 and 1343 (West).....................................................................1
42 U.S.C. 42 § 12102(1)(C) ...............................................................................25
42 U.S.C. §12203 .............................................................................................27
42 U.S.C. § 2000e-5(e)(1)..............................................................................29, 30
42 U.S.C. § 2000e-5(f)(3) ..................................................................................30
42 U.S.C. § 12102(1)(A) and (2).........................................................................32
42 U.S.C. § 1201 (West) ...................................................................................17
42 U.S.C.A. § 12101 (West) ................................................................................1
42 U.S.C.A. § 12102 ....................................................................................8, 17
42 U.S.C.A. § 12102(1)(A) .......................................................................... passim
42 U.S.C.A. § 12102(1)(A)-(C) ..........................................................................12

42 U.S.C.A. § 12102(1)(C) (West) .................................................................. passim
42 U.S.C.A. § 12102(3)...........................................................................................14
42 U.S.C.A. § 12102(3)(A) (West) .........................................................................12
42 U.S.C.A. § 12102(4)(A) (West) .........................................................................12
42 U.S.C.A. § 12102(C) ...........................................................................................17
42 U.S.C.A. § 12112 (West) ....................................................................................11
Pub. L. No. 110– 325, 122 Stat. 3553 § 2(b)(3).....................................................14

Rules

F.R.C.P. 15(a) ....................................................................................... passim
Fed. R. App. P. 32(a)(5) .........................................................................................35
Fed. R. App. P. 32(a)(6) .........................................................................................35
Fed. R. App. P. 32(a)(7)(B) ....................................................................................35
Fed. R. Civ. P. 15(b)(2) ...........................................................................9, 10, 26, 28
Fed. R. Civ. P. 16(b)(4) ............................................................................... passim
Fed. R. Civ. P. 16(b)(4) and (2)........................................................................20, 32
Fed. R. Civ. P. 26(a)(2) .............................................................................................6
Fed. R. Civ. P. 56(a) ...............................................................................................10
*Fed. R. Civ. P. Rule 15* ........................................................................... passim
*Fed. R. Civ. P. Rule 16* ..................................................................................20, 21, 23
Rule 15(a)(2) ...........................................................................................................26
Rule 15(b) ................................................................................................................27
Rule 16(b) ..........................................................................................................21, 22

Regulations

29 C.F.R. § 1630.2(j)(1)(ii) .....................................................................................20
29 C.F.R. § 1630.2(j)(v) .....................................................................................15, 18

## PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

This case was filed pursuant to 42 U.S.C.A. § 12101 (West) *et seq*. to recover for discrimination based on disability and denial of equal protection under the 14th Amendment to the United States Constitution. The district court had jurisdiction over this case pursuant to 28 U.S.C.A. § 1331 and 1343 (West). This court has jurisdiction under 28 U.S.C.A. § 1291 (West), which grants federal appellate courts jurisdiction to review "all final decisions of the district courts of the United States." Appellant's Notice of Appeal was timely filed.

# STATEMENT OF ERRORS

I. **THE COURT DEPRIVED MS. TESONE OF THE ACCESS TO JUSTICE WHEN IT DETERMINED THAT SHE COULD NOT PURSUE A CLAIM FOR DISABILITY DISCRIMINATION UNDER THE ADAA WITHOUT EXPERT TESTIMONY.**

II. **THE COURT ERRED IN FINDING THAT MS. TESONE WAS BARRED FROM BRINGING A CLAIM FOR RETALIATION UNDER THE ADAAA BECAUSE SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES, A PREREQUISITE NO LONGER REQUIRED BY THIS COURT.**

III. **THE COURT FAILED TO PROPERLY ANALYZE WHETHER MS. TESONE HAD ESTABLISHED GOOD CAUSE TO AMEND THE SCHEDULING ORDER TO EXTEND THE TIME TO DESIGNATE EXPERT WITNESSES, AND BY EXTENSION PREVENTED MS. TESONE FROM HAVING HER CASE HEARD ON THE MERITS.**

IV. **IN ITS JANUARY 17, 2019 ORDER, THE DISTRICT COURT DID NOT ACCURATELY APPLY THE TWO-STEP ANALYSIS REQUIRED TO DETERMINE WHETHER MS. TESONE'S MOTION TO AMEND THE SCHEDULING ORDER AND FILE A FIRST AMENDED COMPLAINT SHOULD BE GRANTED.**

V. **THE COURT INCORRECTLY NARROWED MS. TESONE'S CLAIM FOR DISABILITY DISCRIMINATION TO APPLY TO AN ACTUAL DISABILITY ONLY, RATHER THAN A PERCEIVED AND ACTUAL DISABILITY.**

## ISSUES PRESENTED

1.   Whether or not the court erred in its January 17, 2019, decision when it stated that Ms. Tesone must have an expert to establish a prima facie case for discrimination under the ADAAA.

2.   Whether Plaintiff's claim for disability discrimination, as pled on August 31, 2017, includes a perceived disability as defined and protected under 42 U.S.C.A. § 12102(1)(C) (West).

3.   Whether or not the District Court erred in its January 17, 2019, Order by denying the request to add a claim for Retaliation on the basis that Ms. Tesone failed to exhaust the administrative remedies.

4.   Whether or not the District Court erred in denying the Motion for Extension of Time to Designate an Expert Witness on November 8, 2018.

5.   Whether or not the District Court erred in concluding that the Plaintiff could not demonstrate the good cause necessary to amend the Scheduling Order under Fed. R. Civ. P. 16(b)(4) on January 17, 2019.

## STANDARD OF REVIEW

The court reviews the denial of a motion for leave to amend under the abuse of discretion standard.  Bauchman for Bauchman v. W. High Sch., 132 F.3d 542, 559 (10th Cir. 1997). The standard for an abuse of discretion is, "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." F.D.I.C. v. Oldenburg, 34 F.3d 1529, 1555 (10th Cir. 1994). The court must additionally consider whether the proposed amendment would be futile, or, sufficient to survive dismissal.  Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999).   This includes evaluating the strength of the amendments that Plaintiff sought to add to her complaint.  Id.

Abuse of discretion has been found where the district court's decision is based on an error of law.  Bauchman for Bauchman, 132 F.3d 542. There was no abuse of discretion when a plaintiff failed to allege that the amended complaint would be materially different from the first. Sandifer v. Green, 57 F. App'x 857, 860 (10th Cir. 2003). Similarly, a plaintiff was denied a motion to amend two years after the deadline, despite the discovery of new evidence following depositions, because the case had been pending for three years and the amendment would include an entirely new cause of action approximately two months before trial. Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996). However, where the court's rulings prevent the plaintiff from obtaining the evidence needed to amend the complaint, a denial based on timeliness is manifestly unreasonable. Bauchman for Bauchman, 132 F.3d 542.

Lastly, this court reviews issue of statutory construction and law de novo. "A district court always abuses its discretion when it errs on a legal question, and we decide the presence or absence of legal error de novo. So really in cases like this, where everything turns on the interpretation of rules, regulations, and statutes . . . . [t]he real question is simply whether we think the district court read the law correctly. El Encanto, Inc. v. Hatch Chile Co., Inc., 825 F.3d 1161, 1162 (10th Cir. 2016).

## STATEMENT OF THE CASE

In April of 2012 Pam Nocerino referred Ms. Tesone for the position of Produce Retail Sales Merchandiser with Empire Marketing Strategies (APPX 10). From the beginning of her employment, Ms. Tesone let her supervisors know that she struggled with lifting heavy objects due to a pre-existing back injury. (APPX 196). Despite her lifting limitation, Ms. Tesone worked for EMS for four years without incident or reprimand. (APPX 399, APPX 404) Unfortunately in October of 2016, Ms. Tesone was verbally reprimanded by supervisors, Kelly Bruce and Pam Nocerino for using additional night on an overnight work trip to complete her duties. (APPX 327) Ms. Tesone reminded her employer of her need for an accommodation, and EMS ultimately requested that Ms. Tesone provide written documentation to support her request for an accommodation no later than March 3, 2017. (APPX 198) On February 21, 2017, Ms. Tesone provided written documentation to EMS evidencing that she in fact suffered from a back injury and needed a workplace accommodation. (APPX 132-163). This documentation was submitted prior to the March 3rd deadline, however, on February 28, 2017, seven days after providing a written request for an accommodation, EMS fired Ms. Tesone. (APPX 486-487).

5

On August 31, 2017, Ms. Tesone filed the Complaint asserting

(1) Disability Discrimination; (2) Interference with a Contract

and Prospective Business Advantage; and (3) Intentional Infliction of Emotional Distress.

(APPX 1) On November 20, 2017, a scheduling conference was held and on November 21,

2017, a scheduling order was finalized. (APPX 9). The scheduling order called for a

deadline of February 5, 2018 for the parties to designate expert witnesses pursuant to Fed.

R. Civ. P. 26(a)(2). (Id.) The court set a cut-off to amend pleadings for January 22, 2018.

(Id.). The discovery deadline, as outlined by the scheduling order, was set for May 21,

2018, followed by a dispositive motion deadline of July 6, 2018. Due to deposition

scheduling conflicts, these deadlines were extended to file dispositive motions by July 20,

2018. Doc. at 34.

On February 12, 2018, the lower court dismissed Claim Three of Intentional

Infliction of Emotional Distress and the parties stipulated to the dismissal of Claim Two for

Interference with a Contract and Prospective Business Advantage. (Doc. at 25). On July 20,

2018, EMS filed a Motion for Summary Judgment primarily on the bases that Ms. Tesone

could not establish a prima facie case for discrimination. (APPX 17). EMS claimed that

Ms. Tesone failed to demonstrate she was disabled due to her lack of expert testimony.

APPX 23. EMS stated, "[Ms. Tesone's] own statements describing her difficulty lifting are

admissible to the extent they describe her subjective experience; however, to demonstrate

that a 'condition causes limitation on a major life activities' expert medical testimony is

required." APPX 24.  With this filing, EMS exhibited Ms. Tesone's medical records

indicating that she does in fact suffer from chronic lower back pain, muscle weakness, she

cannot lift overhead, and cannot lift spatially in front of her more than 15 pounds. (APPX 140-171). On November 1, 2018, the parties attended a Settlement Conference with the Honorable Judge Kristen Mix. (Doc. at 48) At that time, Magistrate Mix informed Ms. Tesone and undersigned counsel that there was no way she would be successful with a claim for Discrimination for an "actual" disability without expert testimony. Furthermore, Ms. Tesone was informed that although she claimed Discrimination under the ADA generally, her claim does not encompass section 42 U.S.C.A. § 12102(1)(C).

The very next day, November 2, 2018, Ms. Tesone filed a Motion for Extension of Time to Designate an Expert and inherently to amend the scheduling order. (APPX 349). On November 8, 2018, the parties attended oral arguments on the Motion to Extend, and the district court denied the motion without an analysis of Fed. R. Civ. P. 16(b)(4) and 15(a). (Doc. 59). Prior to this hearing, on November 7, 2018, Ms. Tesone filed a Motion to File an Amended Pleading and inherently modify the scheduling order. (APPX 428). At this time, a trial was not set in this case nor had the district court ruled on summary judgment.

On January 17, 2019, the District Court granted the Defendant's Motion for Summary Judgment because "the Tenth Circuit requires the testimony of an expert to establish a prima facie case of a disability under the ADA." (APPX 551). The court filed a separate order that day to deny the Motion to File an Amended Pleading because Ms. Tesone failed to establish good cause to amend the pleadings as to the clarified charge of Disability Discrimination, and because Ms. Tesone did not exhaust her administrative remedies as to the added claim of Retaliation. (APPX 550).

## SUMMARY OF THE ARGUMENTS

Ms. Tesone first asserts that the district court improperly narrowed Claim One of her original Complaint to 42 U.S.C.A. § 12102(1)(A) for an actual disability as defined by the ADA. The court uses language in Ms. Tesone's Complaint which attributes her limitations to a specific back injury as evidence that her claim is specific to an actual disability rather than a disability as defined under 42 U.S.C.A. § 12102(1)(C). Ms. Tesone adamantly asserts that her claim, as pled in 2017, encompasses 42 U.S.C.A. § 12102 et seq. With a finding that her original claim for disability discrimination, as pled, encompasses both an actual and perceived disability, the argument to allow an amended pleaded that includes a specific and separate claim for the "regarded as" disability classification is moot.

Ms. Tesone also asserts that the lower court was incorrect in its January 17, 2018 order when it determined that Ms. Tesone could not establish a prima facie case for discrimination due to her inability to show she is disabled under the ADA. The lower court is incorrect in its finding that without expert testimony, an individual cannot claim that she is actually disabled under 42 U.S.C.A. § 12102(1)(A). The lower court fails to properly analyze the case at bar in light of the Americans with Disabilities Act Amended Act of 2008. Ms. Tesone argues that the congressional intent, and the plain language of the amended Act broadens the scope of the term "disabled" as it relates to individuals who are "regarded as" disabled under 42 U.S.C.A. § 12102(1)(C). The Act also expands the measure for "substantially limits a major life activity." Ms. Tesone asserts that the lower court failed to apply the new standard in determining whether a disability substantially limits a major life activity as outlined by the Code of Federal Regulations. The C.F.R. is clear that an expert or medical testimony is not required to classify as disabled under the ADAAA. Next, Ms. Tesone argues that the court abused its discretion in its analysis, or lack thereof, or Fed. R. Civ. P. 16(b)(4) in determining whether or not Ms. Tesone should have the right to amend the

scheduling order to grant an extension of time to designate expert witness. As the court will see, the lower court did not provide an analysis to support the ruling denying leave to amend on November 8, 2018. However, the lower court, states as an aside in its order denying leave to file an amended pleaded on January 17, 2018, that Ms. Tesone failed to establish good cause to amend the scheduling order to extend the deadline for expert disclosures. The lower court failed to properly analyze and rule on the Motion for an Extension of Time filed by Ms. Tesone on November 2, 2018. There wasn't a finding of undue delay or bad faith, and Ms. Tesone reaffirms that there is good cause to amend the scheduling order to allow an extension of time.

Ms. Tesone additionally argues that the lower court failed to properly walk through Fed. R. Civ. P. 16(b)(4) and 15 when it denied Ms. Tesone's Motion to File an Amended Pleading. While Ms. Tesone vehemently states that the claims as pled encompass both the "regarded as" disability claim as well as a claim for discrimination of an "actual" disability, Ms. Tesone believes that she was within the legal parameters of Rules16(b)(4) and 15. By denying the Motion to Amend, the court prohibited Ms. Tesone from advancing her case on the merits of the case.

Additionally, the lower court failed to walk through this two-step analysis at all as it relates to the added claim of Retaliation. The district court incorrectly states that it would be futile to allow an added claim for retaliation because Ms. Tesone did not  exhaust her administrative remedies as to that claim. Ms. Tesone avers that she is no longer required to exhaust her administrative remedies for each discrete act of discrimination, but rather, the defense is able to use that fact as an affirmative defense. Also, the court fails to address Ms. Tesone's argument in it Reply Brief for the Motion to File an Amended Pleadings which walks through Fed. R. Civ. P. 15(b)(2). Ms. Tesone makes it clear that EMS concedes to the exploration of a potential claim for Retaliation during the truth-seeking process. During a 30(b)(6) deposition, Ms. Tesone, by and through counsel, asks several questions directly related to retaliation of EMS Human Resource Director, Geri Hayes.

Counsel for EMS does not object or attempt to preempt any questions regarding retaliation during

depositions. EMS consented to the discovery of evidence that pertained to a claim for Retaliation,

and the district failed to analyze the application of Fed. R. Civ. P. 15(b)(2) in light of this

concession

## ARGUMENTS

**WHETHER THE COURT ERRED IN ITS JANUARY 17, 2019, DECISION STATING THAT THE PLAINTIFF WILL NOT BE ABLE TO DEMONSTRATE AT TRIAL THAT SHE IS DISABLED AS DEFINED BY THE AMERICANS WITH DISABILITIES ACT.**

A court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the

governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986). If the moving party sufficiently supports a motion for

summary judgment, the burden then falls on the non-moving party to show that there is a

genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct.

2548, 91 L. Ed. 2d 265 (1986). To survive a motion for summary judgment and support a

claim for discrimination under the ADA, a plaintiff must show that she:

> (1) is a disabled person as defined by the ADA;
> (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and
> (3) suffered discrimination by an employer or prospective employer because of that disability.

Felkins v. City of Lakewood, 774 F.3d 647, 650 (10th Cir. 2014) (internal quotation marks

omitted). If a plaintiff is unable to provide direct evidence of discrimination, the court must

apply the McDonnell Douglas Burden Shifting Test articulated by the Supreme Court in

10

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d

668 (1973), holding modified by Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S. Ct.

1701, 123 L. Ed. 2d 338 (1993).  This court previously articulated the *McDonnell*

*Douglas* test as being comprised of three prongs:

1.  The former employee must establish a prima facie case of discrimination;

2.  The burden then shifts to the employer to assert a legitimate,

nondiscriminatory reason for the adverse action; and

3.  The burden shifts back to the employee to show whether the proffered reason

by the employer is merely pretext masking discriminatory animus.

E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1038 (10th Cir. 2011). While the

*McDonnell Douglas* test has proven to be sound law since 1973, the court should analyze

this test in light of the most recent revisions to the ADA, now known as the ADAAA.

> Since its inception,
>
> Title I of the ADA prohibits covered employers from discriminating against qualified individuals with disabilities because of their disabilities with regard to terms, conditions, and privileges of employment including, among other things, job application procedures and the hiring, advancement, or discharge of employees.

Wolski v. City of Erie, 900 F. Supp. 2d 553, 559 (W.D. Pa. 2012); see 42 U.S.C.A. § 12112

(West). On September 25, 2008, the President signed the Americans with Disabilities Act

Amendments Act of 2008 (ADAAA or "Act"). Notice Concerning the Americans with

Disabilities Amendments Act of 2008.[1] The Act emphasizes that the definition of disability

---

[1] https://www.eeoc.gov/laws/statutes/adaaa_notice.cfm (last viewed on May 6, 2019).

should be construed in favor of broad coverage of individuals to the maximum extent

permitted by the terms of the ADA and generally shall not require extensive analysis. Id.

The purpose of the amended Act is to make it easier for an individual seeking

protection under the ADA to establish that he or she is disabled within the meaning of the

ADA. Id. The ADAAA defines disability with respect to an individual as:

> (1) a physical or mental impairment that substantially limits one or more major life
> activities;
> (2) having a record of such an impairment; or
> (3) being regarded as such an impairment.

42 U.S.C.A. § 12102(1)(A)-(C). Further,

> An individual meets the requirement of 'being regarded as having such an
> impairment' if the individual establishes that he or she has been subjected to an
> action prohibited under this chapter because of an actual or perceived physical or
> mental impairment whether or not the impairment limits or is perceived to limit a
> major life activity."

42 U.S.C.A. § 12102(3)(A) (West). With the 2008 Act that went into effect on January 1,

2009, the term disability must be "construed in favor of broad coverage of individuals

under this chapter, to the maximum extent permitted by the terms of this chapter." 42

U.S.C.A. § 12102(4)(A) (West). Furthermore, the Act expanded the definition of

> 'regarded as' so that it no longer requires a showing that the employer perceived the
> individual to be substantially limited in a major life activity, and instead says that an
> applicant or employee is 'regarded as' disabled if he or she is subject to an action
> prohibited by the ADA,"

such as termination. *Notice*, *supra*.

This Court has had limited opportunities to truly discuss and analyze the affect the

recent ADAAA language has had on the expansion of the term "disability" as defined by

the ADA; however, other jurisdictions, such as the Third Circuit, have taken a deep dive to

truly understand the congressional intent behind the 2008 ADA amendments. Furthermore, courts within the third circuit, such as the Western District of Pennsylvania, have recently discussed the changes to the term "substantially limits a major life activity." <u>Wolski</u>, 900 F. Supp. 2d at 565. If a plaintiff is attempting to establish that her current or former employer believed her to be substantially limited in the life activity of "working," then the plaintiff must establish that the employer believed her to be limited in her ability to work in "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." <u>Id.</u> The United States District Court for the Western District of Pennsylvania discussed the issue of defining a disability under the recently amended Act in the 2018 decision for <u>Jakomas v. City of Pittsburgh</u>, 342 F. Supp. 3d 632 (W.D. Pa. 2018) The plaintiff in *Jakomas* argued that the ADAAA does not require an employee proceeding under the "regarded as" prong of the statute to show that she has an impairment that substantially limits a major life activity. <u>Jakomas v. City of Pittsburgh</u>, 342 F. Supp. 3d 632, 646 (W.D. Pa. 2018). The court in <u>*Jakomas*</u> was clear to point out that the precedent in the Third Circuit supported the Defense's argument that, in order to support a claim for disability discrimination by claiming the "regarded as" classification, a plaintiff must do more than show that her employer believed she was disabled and subsequently suffered an adverse employment action occurred[2]. <u>Id.</u> The court in <u>*Jakomas*</u> discussed that various courts are split on the issue of whether cases such

---

[2] The Third Circuit previously held that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." <u>Jakomas</u>, 342 F. Supp. 3d at 646 quoting <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 109 (3d Cir. 1996).

as the then-binding case, <u>Kelly</u>, 94 F.3d at 109), remain good law post the ADAAA. <u>Id.</u> at

647. In discussing this issue, the court stated,

> The issue is whether Kelly retains its precedential force on this point in light of the
> intervening amendments to the ADA. This Court is, of course, bound by the
> precedential decisions of the Third Circuit. And, 'stare decisis carries enhanced force
> when a decision … interprets a statute.' But this is only so because 'Congress can
> correct any mistake it sees' in a judicial interpretation and eliminate it from the
> statutory scheme. That is, Congress can indicate that it intends to alter an established
> understanding of what a law means if it uses clear language to that effect.

<u>Id.</u> The court enhances its point by relying on language from <u>Hayes v. Harvey</u>, 903 F.3d 32

(3d Cir. 2018) where the Third Circuit stated, "when Congress amends legislation,

courts must presume it intends to have real and substantial effect." <u>Hayes</u>, 903 F.3d 32.

Based on this analysis, the court held that "Congress, through enacting the ADAAA,

intended to alter the existing judicial interpretations of 'regarded as' claims under the ADA.

First, the ADAAA itself states as much." <u>Jakomas</u>, 342 F. Supp. 3d 632. The court relies on

the language directly from the Act which intends to "reject the Supreme Court's narrow

view of 'regarded as' claims and reinstate a broad view of these claims." ADA

Amendments Act of 2008, Pub. L. No. 110– 325, 122 Stat. 3553 § 2(b)(3). The court

in *Jakomas* went on to state that

> the statutory definition of 'being regarded as having such an impairment', codified at
> 42 U.S.C.A. § 12102(3), was added by the ADAAA post-Kelly, was not interpreted
> by the *Kelly* court, and has not yet been construed by the Third Circuit in a
> precedential opinion. As additional language that clarifies the intended scope
> of 'regarded as' claims, this subsequent legislation is "entitled to great weight in
> statutory construction.

<u>Id.</u> at 647–648.

     While some jurisdictions are either divided or have not yet set what will soon be a

new precedent on this issue, this Honorable Court has at least recognized and adopted the

new congressional intent in applying a broad interpretation of the term "disability" under

the ADAAA. In *Adair v. City of Muskogee*, this Court discussed Congress's purpose to

apply a "broad scope protection" afforded by the ADA by expanding the reach of the term

"disabled." <u>Adair v. City of Muskogee</u>, 823 F.3d 1297, 1305–06 (10th Cir. 2016).

> Unlike an impairment as defined in subsections (A) or (B), an impairment under §
> 12102(1)(C) need not limit or even be perceived as limiting a major life activity—
> the employer need only regard the employee as being impaired, whether or not the
> employer also believed that the impairment prevented the employee from being able
> to perform a major life activity. Under the ADAAA, the only qualification for an
> impairment in a "regarded as" claim is that the impairment not be "transitory and
> minor.

<u>Id.</u>

With the expansion of the term "disability" through 42 U.S.C.A. § 12102(1)(C),

Congress also loosened the reigns on the evidence needed to satisfy the requirements to

show that an individual has "an actual physical or mental impairment that substantially

limits one or more major life activities." 42 U.S.C.A. § 12102 (1)(A). According to the

Regulations to Implement the Equal Employment Provisions of the Americans with

Disabilities Act, "the comparison of an individual's performance of a major life activity to

the performance of the same major life activity by most people in the general population

usually will not require scientific medical or statistical analysis." 29 C.F.R. § 1630.2(j)(v).

Furthermore, the term substantially limits must be "construed broadly in favor of expansive

coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits'

is *not* meant to be a demanding standard." <u>Id.</u> (Emphasis added). While this statute does not

preclude the use of expert testimony or evidence to support a disability classification, it

likewise does not require such testimony or evidence to satisfy 42 U.S.C.A. § 12102(1)(A).

15

This statute, the case law, and the amended Act have shifted to support disabled individuals like Ms. Tesone. The Act has been amended to favor plaintiffs who, historically, have been precluded from seeking relief from discriminatory employers due to legal red tape. This construction protects pro se litigants, litigants who cannot afford the cost of expert testimony, and employees who cannot afford the medical bills associated with seeking or updating a formal diagnosis consistent with the symptoms that they can subjectively testify to.

Here, The United States District Court for the District of Colorado failed to address, recognize, and apply the ADA as amended in 2008. In support of its Motion for Summary Judgment, the defense argues that Ms. Tesone failed to provide enough evidence to carry her burden of persuasion at trial and, specifically, that Ms. Tesone would not be able to establish a prima facie case of discrimination. (Doc 63). The District Court then supports and elaborates on EMS' argument that Ms. Tesone is unable to establish a prima facie case for discrimination under the ADA because she cannot support that she is disabled as defined by the ADA. Id.

First, the lower court incorrectly claims that Ms. Tesone pled her claim for discrimination based on 42 U.S.C.A. § 12102(1)(A) due to language in her Complaint, which states: "at the time of her termination, Ms. Tesone was a qualified individual with one disability of lower back pain." Id. While Ms. Tesone does state that she is disabled due to lower back pain, she does not claim to be disabled under any specific section of 42 U.S.C.A. § 12102. (APPX 1-8). In her Complaint, Ms. Tesone makes her first prayer for relief based on "Disability Discrimination, ADA, 42 U.S.C.A. § 1201 (West) et seq."

16

(APPX 5) In paragraph 34 of the Complaint, Ms. Tesone pleads that she is a qualified individual with a disability of lower back pain, but can do her job with a reasonable accommodation. (Id.) The Complaint goes on to assert that EMS engaged in a hostile work environment because of Ms. Tesone's disability and they fired Ms. Tesone because of her disability. (Id.) While the Complaint does not specifically add that EMS "regarded" Ms. Tesone as disabled, the Complaint is clear that the adverse employment actions were the result of EMS' knowledge and belief that Ms. Tesone was disabled. Just because Ms. Tesone states in her complaint that she is disabled for a specific medical issue, does not mean that she cannot claim disability classification under 42 U.S.C.A. § 12102(C) as the lower court states. In their Motion for Summary Judgment, EMS recognizes that during the course of Ms. Tesone's employment, they did actually accommodate Ms. Tesone. (APPX 21-22). The respondent has stated that "Empire continued to counsel Plaintiff that she always had assistance in completing resets.  APPX 26.  Accordingly, Empire provided reasonable accommodations, even though Plaintiff failed to provide any doctor note." (Id.) EMS concedes on multiple occasions that it regarded Ms. Tesone as disabled. Based on the record and the respondent's own concessions, the lower court improperly narrowed Ms. Tesone's claim to a claim for an actual disability under 42 U.S.C.A. § 12102(1)(A).

Even if Ms. Tesone intended to pursue her claim under section 12102(1)(A), the lower court (and EMS) still improperly analyzes the applicability of 12102(1)(A) under the ADAAA. In its January 17th order granting EMS' Motion for Summary Judgment, the court states that Ms. Tesone cannot produce sufficient evidence to prove that she has a condition that substantially limits at least one major life activity "because she 'presented no expert

17

medical evidence that any of her major life activities have been substantially limited by' her alleged disability." (APPX 561). This ruling directly contradicts the language in 29 C.F.R. § 1630.2(j)(v), establishing the methods needed to determine whether an impairment substantially limits one or more major life activity. The Code of Federal Regulations is clear that scientific or medical testimony is not a requirement to establish that an impairment substantially limits a major activity, and the statute allows a subjective comparison between the individual claiming the limitation and most people performing the same major life activities. The lower court grants the respondents Motion for Summary solely on the basis that Ms. Tesone failed to provide an expert to support her claim, and Ms. Tesone's limitations were never subjectively analyzed under 29 C.F.R. § 1630.2(j)(v). (APPX 561). EMS and the lower Court improperly rely on *Felkins v. City of Lakewood* to affirm the assertion that, without a medical expert, Ms. Tesone's claim for discrimination, if pled under 42 U.S.C.A. § 12102(1)(A), would fail. However, in reviewing *Felkins*, the issue regarding the requirement for a medical expert is purely evidentiary. *Felkins* fails to produce any medical evidence to support that she actually suffered from a chronic condition or was in need of a workplace accommodation:

> None of the medical evidence in the appellate record supports Ms. Felkins's allegation that she has avascular necrosis or details the degree to which it affects her major life activities. After Ms. Flelkins's surgery, a physician assistant filled out an FMLA form stating that Ms. Felkins did not have a chronic condition. That same physician assistant later wrote a note stating only 'return to work full duty 1/7/09' There is no mention of avascular necrosis, much less a description of its effects on Ms. Felkins.

Felkins v. City of Lakewood, 774 F.3d 647, 651 (10th Cir. 2014). The court's unwillingness to allow Ms. Felkins to proceed with such a shaky foundation is not due to a

requirement for expert testimony to establish that an impairment substantially limits a major life activity, but, rather, to overcome admissibility at trial. The court determines that the only evidence to supports that Felkins is in need of an accommodation due to avascular necrosis is her own declarations. As a lay witness, Felkins would only be able to testify to her subjective beliefs, but would not be able to input her opinion on her medical issues. The only evidence available to Ms. Felkins during trial to support her medical diagnosis would have been her own inadmissible testimony.

Here, Ms. Tesone's record is wholly distinguishable from that of <u>Felkins</u>. Ms. Tesone has submitted into the record, on numerous occasions, a letter requesting accommodations from a medical professional with Namaste Medical Group. APPX 423. Unlike the note in *Felkins*, this medical record states that Ms. Tesone sufferers from *chronic* lower back pain, caused by a 2006 car accident; that she needs a workplace accommodation; and that her chronic back pain results in functional limitations. APPX 204. Moreover, Ms. Tesone submitted the full record of the exam with Namaste Medical Group outlining prior medical history, range of motion, symptoms of her current condition, and any medication she was on at the time of the exam. (APPX 140-171). Not only did Ms. Tesone submit this medical record to the Defense and reference it during the course of discovery, EMS cited to and submitted a copy of the full medical record in their Motion for Summary Judgment. (APPX 19).

In *Felkins,* a medical diagnosis to support a medical condition and request for accommodation did not exist, and Ms. Felkins' subjective testimony regarding her medical issues alone was not enough. Again, that does not address or override the current amended

19

language of the ADAAA that qualifies an impairment as a disability within the meaning of

the section if it substantially limits the ability of an individual to perform a major life

activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii).

The lower court's ruling defies the intent of Congress when they Amended the ADA to

make it easier for an individual to show she is disabled under the ADA. Adair, 823 F.3d

1297, at 1305. Unfortunately, the district court relied on an antiquated and elitist

requirement that would prevent so many disabled individuals in this Country to pursue a

claim for discrimination under the ADA unless they have the financial ability to not only

seek a medical evaluation, but then produce a medical expert in a trial setting. The lower

court's January 17th ruling on summary judgement failed to adhere to the intent and plain

language of the ADAAA, which was to expand the applicability of the ADA's protections.

The court's oral ruling on November 8, 2018, denying the extension of time to designate an

expert and amend the scheduling order, further illustrates the sort of legal obstacles a

discrimination victim must overcome just to get her case heard. App. 455.

**WHETHER THE DISTRICT COURT ERRED IN ITS JANUARY 17, 2019, ORDER DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED PLEADING AND AMEND THE SCHEDULING ORDER.**

> *a. The lower court failed to properly apply Fed. R. Civ. P. Rule 16 in its analysis on January 17, 2019.*

After a scheduling order deadline, a party seeking leave to amend must demonstrate

(1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction

of the Rule 15(a) standard. Fed. R. Civ. P. 16(b)(4) states that "a schedule may be modified

only for good cause and with the judge's consent."

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.

Colorado Visionary Acad. v. Medtronic, Inc., 194 F.R.D. 684, 687 (D. Colo. 2000).

To demonstrate good cause pursuant to Rule 16, the moving party must provide an

adequate explanation for the delay. Lehman Bros. Holdings Inc. v. Universal Am. Mortg.

Co., LLC, 300 F.R.D. 678, 681 (D. Colo. 2014). Additionally, a court may consider the

procedural posture of a case in a Rule 16(b) "good cause" analysis. Nicastle v. Adams Cty.

Sheriff's Office, No. 10-CV-00816-REB-KMT, 2011 WL 1465586, at 3 (D. Colo. Mar. 14,

2011), report and recommendation adopted, No. 10-CV-00816-REB-KMT, 2011 WL

1464588 (D. Colo. Apr. 18, 2011). "If a [p]laintiff fails to show good cause under Rule

16(b)(4), there is no need for the Court to move on to the second step of the analysis, i.e.,

whether [the] [p]laintiff has satisfied the requirements of Rule 15(a)." Carbajal v. St.

Anthony Cen. Hosp. No. 12-cv-02257-REB-KLM, 2015 WL 149984, at *3 (D. Colo. Mar.

27, 2015).

Various jurisdictions, including this one, have analyzed the good cause standard in

light of a party's diligence, but it's in the Eighth Circuit where that court reviews a

movant's diligence in light of learning new knowledge during the course of discovery.

While not binding, the analysis and exploration of neighboring jurisdictions' authority is

enlightening at the very least. In *Harris*, Inc, the plaintiff sought leave to amend their

complaint for a fourth time, and the amendment at issue was 17 months after the deadline

for doing so had passed. Harris v. FedEx Nat. LTL, Inc., 760 F.3d 780, 786 (8th Cir. 2014).

In support, the plaintiff argued that they had "good cause for their tardy request for leave to amend because the evidence supporting the new theories in the amended complaint became available during a discovery process that was unusually protracted due to scheduling difficulties not attributable to the plaintiffs." Id. In this case, the Eight Circuit stated that a lower court's decision to deny a motion to amend is reviewed on an abuse of discretion standard; however, the moving party failed to raise the issue that they'd learned new information over the course of discovery. As such, the circuit court held that they could not find that the lower court abused their discretion without actual knowledge of the moving party's rationale. Id.

The Eighth Circuit relied not only on Rule 16(b), but also rulings from other jurisdictions, such as the Sixth Circuit. In *Leary v. Daeschner*, the plaintiff successfully amended their original complaint to add four new claims and their respective damages. Leary v. Daeschner, 349 F.3d 888, 905 (6th Cir. 2003). However, the plaintiff later tried to file a second amended complaint to add additional claims for damages. Id. At 905. The District Court denied the second request to amend the complaint for failing to show good cause pursuant to Rule 16(b) of the Federal Rules. The lower court stated:

> The plaintiffs seek at this late date to recast the due process violation as one for breach of the collective bargaining agreement. They have provided no justification for their failure to raise this legal theory earlier. The plaintiffs have referenced the collective bargaining agreement throughout this litigation, and the claim has clearly been available to them. As an aside, the district court noted that even if Plaintiffs had been permitted to amend their claims, the amendment would be futile because they did not include any binding precedent to support their contention that damages are available when Plaintiffs waive "process which was due [and] subsequently afforded them."

22

Id. In analyzing this issue and discussing the difficult intersection between the naturally liberal nature of F.R.C.P. 15(a) and the less lenient nature of 16(b), the Sixth Circuit considered rulings from the Second, Ninth, and Eleventh Circuits. Additionally, the Court reviewed its previous rulings where it determined that "while prejudice to the defendant is not an express component of Rule 16, it is nonetheless a 'relevant consideration." Id.. In 1986, the Sixth Circuit ruled that an abuse of discretion exists when a lower court's refusal to grant an amendment would eliminate the plaintiff's opportunity to be heard on the merits of the facts, which were well-known to both parties. Nonetheless, the court determine that the plaintiff could not establish good cause. In that situation, the proposed *second* amendment came on April 30, 2001, seventeen months after the deadline to amend, nine months after the district court's grant of summary judgment on the plaintiffs' first amended complaint, eight months after the district court dismissed most of the claims in the first amended complaint, and two years after the discovery and dispositive motion deadline. Id. at 908. The court determined that the lower court did not abuse its discretion in denying the amendment, in part because of the prejudice to the defense if it had to reopen discovery *years* after it was closed. Id. at 909.

The case at bar is distinguishable from *Harris* and *Leary*. In *Harris*, the appellate court could not find the lower court abused its discretion because the plaintiff failed to inform the district court that they were moving to amend due to new information discovered during the course of discovery. Here, Ms. Tesone informed the district court that it wasn't until the final deposition, which occurred almost a month after the original discovery deadline, that Ms. Tesone gathered additional evidence to support a claim for

23

retaliation. APPX 469. It wasn't until June 20, 2018, that EMS's Human Resource Director, Geri Hayes, confirmed during her deposition that the company did not consider firing Ms. Tesone until she made an oral request for an accommodation. Id. Ms. Tesone informed the lower court in her Motion to Amend that it wasn't until that moment that she obtained the necessary tangible evidence necessary to support a valid claim for retaliation.

Additionally, this case is distinguishable from *Leary* and *Harris* because Ms. Tesone was not seeking her fifth or second amended complaint years after the close of discovery, but rather, she sought to file her First Amended Complaint less than four months after the final deposition. At the time Ms. Tesone sought leave to amend the complaint, the case was not set for trial, the lower court had not issued a ruling on summary judgment, and, as the lower court stated in its Order denying leave to Amend, the procedural posture of the case had been relatively quiet. APPX 551. Not only is the procedural posture vastly different than *Harris*, the amendment should not come as surprise to EMS, nor would the amendment prejudice EMS.

The lower court relies on unreported District of Colorado case, *Lariviere,* to shrug off Ms. Tesone's argument that the amendment wouldn't prejudice EMS by stating that prejudice is "irrelevant" when analyzing good cause. However, if this court reviewed *Lariviere* it would see that the lower court did not find that prejudice is "irrelevant," but rather, that the lack of prejudice in itself does not establish good cause. Lariviere, Grubman & Payne, LLP v. Phillips, No. 07-CV-01723-WYD-CBS, 2010 WL 2844361, at *12 (D. Colo. July 15, 2010), report and recommendation adopted, No. 07-CV-01723-WYD-CBS, 2010 WL 4818101 (D. Colo. Nov. 9, 2010). Ms. Tesone argues that the addition of her

24

amended claim for Disability Discrimination to specifically add 42 U.S.C. 42 §

12102(1)(C) and a Claim for Retaliation as defined by the ADAAA does not prejudice

EMS because the amendment does not alter the theory of the case and the Respondent is

already on notice of these claims. In *Lariviere*, the district court states that the defendant's

reliance on 16(b)(4)

> seems to elevate form over substance. Given the prior concessions of his own
> counsel, Defendant Phillips has had ample notice of LGP's intent to pursue a lien
> enforcement claim against its former client. *Cf* Scheidecker v. Arvig Enterprises,
> Inc., 193 F.R.D. 630, 633 (D. Minn. 2000) (finding good cause under Rule 16(b)(4)
> to grant plaintiff's untimely motion to amend, in part, because the defendant had
> long been aware of the entity that plaintiff was actually seeking to sue). Under the
> particular circumstances applicable to Mr. Phillips, I find good cause to allow the
> untimely motion for leave to amend as that defendant.

Lariviere, Grubman & Payne, LLP, 2010 WL 2844361, at *12. Although the lower court

uses *Lariviere* to dismiss Ms. Tesone's good faith argument that the lack of prejudice,

while not an element of 16(b)(4), is a relevant factor that should be taken into consideration

given EMS's clear knowledge of these potential claims. Because the district court erred in

its evaluation of the requirements under 16(b)(4), it never reached the necessary,

subsequent analysis under second step of the analysis, i.e. whether Plaintiff has satisfied the

requirements of Rule 15(a).  Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1247 (10th Cir.

2015).

b.  *The lower court failed to properly apply Fed. R. Civ. P. Rule 15 in its
    analysis on January 17, 2019*

Rule 15(a)(2) states that after the deadline for amending a pleading as a matter of

course, "a party may amend its pleading only with the opposing party's written consent or

the court's leave. The court should freely give leave when justice so requires.

25

> Rule 15(a) has been interpreted ... to require that amendments be freely allowed in the absence of a narrowly defined set of exceptional circumstances. The rules governing amendment and supplemental pleadings are generally liberally construed in favor of permitting amendment, consistent with the goal of ensuring that all related claims are litigated in a single action. Leave to amend should be freely given based on the balancing of several factors, including futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies, and prejudice to the opposing party.

Lariviere, Grubman & Payne, LLP, 2010 WL 2844361, at *12, *quoting* Arkansas-Platte & Gulf P'ship v. Dow Chem. Co., 886 F. Supp. 762, 765 (D. Colo. 1995). Again, Ms. Tesone recognizes that we're pointing the courts attention to an unreported case; however, it's the lower court who relies on this case in its order denying leave to amend. APPX 553. In *Lariviere*, the court again addresses prejudice to the non-moving party when analyzing whether to allow a second amended pleading as to Defendant Phillips. Id. The district court determined that there was no evidence of bad faith and that Phillips, who was already on notice of these potential claims, was not unduly prejudiced by the amendment. Id. For those reasons, the district court granted the second amendment as to *Phillips*. Id.

In applying Fed. R. Civ. P. 15, the rule outlines not only the law allowing leave to amend before and after filing the original complaint, but also amending pleadings during and after trial. Rule 15(b)(2) states:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Courts have applied this rule to allow the amendment of claims during and even after trial based on the evidence that arises during the process. *E.g.*, Mellon Bank, N.A. v. Gen. Elec. Credit Corp., 724 F. Supp. 360, 366 (W.D. Pa. 1989) ("Amendment of the pleadings may

be permitted to conform to the evidence."). The 5th Circuit laid out a wide opening for

amending pleadings as long as federal jurisdiction was not changed:

> Amendments to conform to proof are permitted under Rule 15(b) in order to bring the pleadings into line with the issues actually developed during the trial even though the issues were not adequately presented in the pleadings. The prime purpose of 15(b) is to avoid the necessity of new trials. But an amendment may be made at any time and . . . . the only qualification to the rule is that federal jurisdiction be neither enlarged nor restricted.

Falls Indus., Inc. v. Consol. Chem. Indus., Inc., 258 F.2d 277, 285 (5th Cir. 1958)

Here, the district court has provided no analysis regarding Ms. Tesone's Motion to

Amend the Scheduling order pursuant to Fed. R. Civ. P. 15. In the absence of any analysis,

Ms. Tesone reasserts her position from her initial Motion to Amend the Scheduling Order

as well as her Reply Brief filed on November 28, 2018: Ms. Tesone and undersigned

counsel have been nothing but candid with this Court and the lower court in explaining the

request to amend the scheduling order to add the additional claims of Disability

Discrimination under 42 U.S.C. § 12102 (1)(C) and Retaliation under 42 U.S.C. §12203.

Ms. Tesone contends that Claim One of her complaint is sufficient to argue

discrimination for an actual disability, but also a perceived disability. However, she sought

an amendment to add specificity after the district court magistrate assigned to mediate this

case told her counsel that claim one, as pled, would absolutely fail. However, if this court

finds that the lower court erroneously and improperly classified Ms. Tesone's Claim One as

a claim under 42 U.S.C. § 12102(1)(A) only, then the issue of granting the amendment as to

Disability Discrimination pursuant to 42 U.S.C. § 12102(1)(C) is moot.

However, as to the claim for Retaliation, Ms. Tesone reasserts that the addition of

this claim was made in good faith and as a direct result of new information learned during

the course of discovery. As noted already, additional evidence of retaliation was not

discovered until a month after the close of discovery and five months after the deadline to

amend passed. During the deposition of Geri Hayes and in the Rule 30(b)(6) notice that

preceded that hearing, Ms. Tesone made it clear that she was seeking information from

EMS to establish a claim for retaliation. APPX 470. This discovery of new information

supports a request to amend the pleadings, not only under Rule 15(a), but also Rule

15(b)(2). The amendment filed by Ms. Tesone in November of 2018, should have been

granted to ensure that Ms. Tesone was able to advance her case on the merits of the facts in

evidence rather than on "procedural niceties." Minter v. Prime Equip. Co., 451 F.3d 1196,

1204 (10th Cir. 2006). The district court's failure to analyze the claim for Retaliation under

Rule 15 and Rule 16 was reversible error.

> c.   *The lower court erred in finding that Mrs. Tesone is barred from amending*
> *her pleading to add the claim for retaliation due to a failure to exhaust her*
> *administrative remedies.*

"A proposed amendment is futile if the complaint, as amended, would be subject to

dismissal." Jefferson County School Dist. No. R-1, 175 F.3d at 859. Historically, this court

has found that a plaintiff is required to exhaust the administrative remedies as a

jurisdictional prerequisite to file suit. Sampson v. Civiletti, 632 F.2d 860, 862 (10th Cir.

1980), abrogated by Lincoln v. BNSF Ry. Co., 900 F.3d 1166 (10th Cir. 2018). "In the

Tenth Circuit, a plaintiff must exhaust her claims before the EEOC as a prerequisite to

federal court jurisdiction over her ADA claims." MacKenzie v. City & Cty. of Denver, 414

F.3d 1266, 1274 (10th Cir. 2005), abrogated by Lincoln v. BNSF Ry. Co., 900 F.3d 1166

(10th Cir. 2018). This court analyzed the 1982 Supreme Court analysis in *Zipes* where the

Court found that,

> filing an EEOC charge within the statutory time limit established by 42 U.S.C. §
> 2000e-5(e)(1) was not a jurisdictional prerequisite to suit . . . . Instead, a plaintiff's
> failure to file a timely EEOC charge permits a defendant only an affirmative
> defense, a defense subject to waiver, estoppel, and equitable tolling.

Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1183 (10th Cir. 2018) (internal citations

omitted). The court in Lincoln goes on to state that,

> The statutory language establishing the time limit to file an EEOC charge is the
> same language that imposes a duty on the plaintiff to file an EEOC charge before
> bringing suit. And nothing in the provision authorizing federal courts to take
> jurisdiction over ADA claims contains a requirement that a plaintiff exhaust his
> administrative remedies before filing suit.

Id. (internal citations omitted).

This court not only disagreed with the petitioner's application of *Zipes* as precedent

in the *Lincoln* analysis, it also disagreed with the EEOC's application of Arbaugh v. Y&H

Corp., 546 U.S. 500, 505, 126 S. Ct. 1235, 1239, 163 L. Ed. 2d 1097 (2006)) in the

Commission's amicus brief.[3] Despite not finding *Zipes* or *Arbaugh*, applicable this court

found that its forty-year precedent requiring a plaintiff to exhaust their administrative

remedies is incorrect. The court reviewed 42 U.S.C. § 2000e-5(f)(3) and determined that:

> This provision makes no mention of any requirement to exhaust administrative
> remedies or to file an EEOC charge before bringing suit. Further, as earlier noted,

---

[3] "While Arbaugh supports Appellants' position that exhaustion is not jurisdictional, it merely
applied the teachings of Zipes to another provision in Title VII. As we have already determined
that Zipes is not an intervening decision that permits a panel of this court to reverse our precedent,
it follows that Arbaugh, which merely applies Zipes, also does not qualify as an intervening
decision. This is particularly true where Zipes dealt with the specific provision governing the filing
of an EEOC charge while Arbaugh dealt with a provision of Title VII unrelated to the filing of an
EEOC charge. Therefore, neither Appellants nor the EEOC has cited an intervening Supreme Court
decision that permits us, as a panel of this court, to overrule a prior panel decision." Lincoln, 900
F.3d at 1184.

the provision requiring that an ADA claimant file an EEOC charge, 42 U.S.C. § 2000e-5(e)(1), is the same provision that sets the timeframe for filing an EEOC charge. In fact, the language setting the timeframe for filing an EEOC charge is the only language requiring that a plaintiff, in fact, file a charge.

<u>Lincoln</u>, 900 F.3d at 1185.

Not only did this court review the relevant statutes, they reviewed their previous holdings and circulated the opinion in *Lincoln* to all active member of this court before ultimately concluding that the filing of an EEOC charge is no longer a jurisdictional prerequisite. <u>Id.</u> Furthermore, the court held that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." <u>Id.</u>

Here, the respondent opposed Ms. Tesone's Motion to File an Amended Pleading by ignoring this Court's recent holdings. (Doc. 60). The respondent states, "the termination of employment is a discrete employment action for which an employee must timely exhaust administrative remedies." Doc. 60. The lower court then echoes this rational, ignoring the new holding of the Tenth Circuit in *Lincoln*, when it finds that allowing Ms. Tesone to amend her Complaint to include the claim for Retaliation pursuant to the Americans with Disability Act, as amended, would be futile because she failed to exhaust her administrative remedies. (APPX 554)

This Court's October, 2018, ruling in *Lincoln* overturning forty-years of precedent is consistent with the wave of legislation and caselaw discussed throughout this brief that expands the rights of plaintiffs across the nation. The holding in *Lincoln* lifts a burden and removes the legal red tape that had previously barred so many disabled Americans for such

administrative missteps as not checking a box on a one-page EEOC charge form. <u>Lincoln</u>, 900 F.3d 1166. Here, the district court never reaches this analysis and, therefore, precludes Ms. Tesone from asserting the retaliation claim. Because the court failed to move past the administrative exhaustion issue, it did not properly address whether or not she had satisfied the analysis under Rule 15(a) and 16(b) of the Federal Rules.

As stated above, the deadline to amend the pleadings was January 22, 2018. The close of discovery was May 21, 2018. Due to scheduling concerns. The parties mutually agreed to amend the scheduling order to accommodate the depositions scheduled. During the deposition with EMS's HR Director, Geri Hayes, the parties requested information regarding retaliation by EMS against Ms. Tesone. Prior to this hearing, Plaintiff's counsel did not have actual knowledge nor a sound evidentiary foundation to support a claim for retaliation outside of a few allegations that seemed to be unconnected. However, during her deposition, Ms. Hayes testified that EMS did not begin the process of terminating Ms. Tesone until after she made an oral request for accommodations, and the final decision was made and delivered to Ms. Tesone one week after her formal written request was submitted.

This evidentiary support for retaliation was discovered during the truth-seeking process and not available to Ms. Tesone or her counsel prior to the January, 2018, amendment deadline. As stated by the lower court, good cause may be satisfied if a plaintiff learns new information through the discovery process or if the underlying law has changed. APPX 553. Not only do we have a change in the law in October of 2018, less than one month prior to the filing of the Motion to Amend, but Ms. Tesone also discovered new information during the course of discovery. Furthermore, this information was discovered

at the end of June, less than five months prior to the request to file a First Amended

Complaint.

**THE DISTRICT COURT ERRED IN DENYING MS. TESONE'S REQUEST TO AMEND THE SCHEDULING ORDER TO EXTEND THE DEADLINE TO ENDORSE AN EXPERT WITNESS.**

As stated above, a party seeking leave to amend must demonstrate (1) good cause for

seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a)

standard. Rule 16(b)(4) states that "a schedule may be modified only for good cause and

with the judge's consent."

On November 2, 2018, Ms. Tesone filed a Motion to Amend the Scheduling order to

extend the period for designating expert witnesses. (Doc. 50). In the January 17, 2019,

order denying the Motion to Amend the Pleadings, the lower court briefly addressed the

November 2nd Motion to Amend when it stated that undersigned counsel "candidly

conceded that this failure [to designate an expert] would almost certainly prejudice his

client's case." APPX 551.  Plaintiff did make this argument, and it came at the direction

and insight of a district magistrate. The magistrate was adamant that: (1) an expert witness

was necessary to bring a claim for disability discrimination under 42 U.S.C. § 12102(1)(A)

and (2) Claim One, as pled in the original complaint, would not encompass 42 U.S.C. §

12102(1)(C). This information was conveyed to undersigned counsel during mediation

scheduled on November 1, 2018. (Doc. 48). The Motion to Amend at issue was filed just 24

hours after that settlement conference. (Doc. 49).

Ms. Tesone is now asserting that (1) her claim is sufficiently pled to encompass both

an actual and "regarded as" disability claim and (2) an expert witness is not necessary to

assert a claim for discrimination of an actual disability. She still contends the lower court abused its discretion in denying the Motion for Extension of Time to designate an expert and amend the scheduling order. (Doc. 50). The lower did not issue a written order denying the motion to extend. In its January 17th Order denying the Motion to Amend the Complaint, the lower court briefly mentioned that there wasn't good cause to amend under Rule 16(b)(4); however, the court provided no analysis to support its ruling.

During the November 8, 2018, hearing on the Motion to Extend, the lower court ruled on the motion from the bench, stating that he "can't find a legal basis to grant [docket number] 50…" App. 455:23-24. The lower court's failure to consider that its order in denying Plaintiff's Motion to Extend resulted in a dismissal without a hearing on the merits of the case. As stated in *Lariviere*, a case relied on by the lower court, the underlying purpose of Fed. R. Civ. P. 15(a) is to ensure a decision on the merits. The court's exercise of discretion should be "guided by the underlying purpose of Rule 15." Id. However, the lower court in the case at bar denied Ms. Tesone's attempt to correct a possible administrative shortcoming in her case and ensure that it is heard on the merits. This ruling not only contradicts the purpose of Rule 15, it also offends the purpose of the ADAAA. The Act was amended with the sole purpose to increase the access to justice. Notice Concerning the Americans with Disabilities Amendments Act of 2008.[4] Unfortunately, the rulings from the lower court on November 8, 2018, and January 17, 2019, have drastically curtailed Ms. Tesone's access to justice and allowed an individual with a disability, as recognized by the ADAAA, to suffer from unchecked discrimination by her employer.

---

[4] https://www.eeoc.gov/laws/statutes/adaaa_notice.cfm (last viewed on May 6, 2019).

## CONCLUSION AND PRAYER FOR RELIEF

Based on the foregoing, Ms. Tesone respectfully prays that this Honorable Court (1) reverse the January 17, 2019, ruling by the district granting EMS's Motion for Summary Judgment; (2) reverse the January 17, 2019, order denying the Motion to Amend the Scheduling Order; (3) reverse the November 8, 2018, oral ruling denying the Motion for Extension of Time to Designate an Expert and Amend the Scheduling Order.

Respectfully Submitted May 7, 2019

Joseph A. Whitcomb, Esq.
LaQunya L. Baker, Esq.
Whitcomb, Selinsky, McAuliffe, PC.
2000 S. Colorado Blvd
Tower 1, Suite 9500
Denver, CO 80222
(303)534-1958
laqunya@wsmlawpc.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

[X] This brief contains 10,312 words, excluding the parts of the brief exempted by Fed.
R. App. P. 32(a)(7)(B)(iii). I relied on MS Word's word count for this certification.

2. This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using MS
Word in Times New Roman 13-point font, except for longer quotes.

Date: May 7, 2019

Joseph A. Whitcomb, Esq.
LaQunya L. Baker, Esq.
Whitcomb, Selinsky, McAuliffe, PC.
2000 S. Colorado Blvd
Tower 1, Suite 9500
Denver, CO 80222
(303)534-1958
laqunya@wsmlawpc.com

**CERTIFICATE OF DIGITAL SUBMISSIONS AND PRIVACY REDACTIONS**

I hereby certify that a copy of the foregoing APPELLANT'S OPENING BRIEF, as submitted in Digital Form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the Norton Internet Security Online, most recent update: December 4, 2018, and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made.

By: s/Joseph A. Whitcomb

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2018, I served a copy of the foregoing

electronically with the Clerk of Court by using the CM/ECF system, which will send a

notice of electronic filing to the following:

John Roger Mann
John D. Keen
555 Seventeenth St., Suite 3400
Denver, CO  80202
Tel: (303) 534-5160
Fax: (303) 534-5161
jmann@gordonrees.com
jkeen@grsm.com

*Attorneys for Defendants*

> /s/ Joseph A. Whitcomb
> For Whitcomb, Selinsky, McAuliffe, PC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02101-MEH

JONELLA TESONE,

 Plaintiff,

v.

EMPIRE MARKETING STRATEGIES,

 Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

 Before the Court is Plaintiff's Motion to File an Amended Pleading [filed November 7, 2018; ECF No. 54]. Plaintiff seeks to add claims for discrimination on the basis of a perceived disability, and retaliation in violation of the Americans with Disabilities Act (ADA). Plaintiff files this Motion after the culmination of a series of unfortunate events that leaves her seeking to amend her Complaint after the Scheduling Order's deadline for amendment of pleadings has passed, discovery has closed, and Defendant's Motion for Summary Judgment is fully briefed. At this late stage in the litigation, I find that Plaintiff has not shown the good cause necessary to amend the Scheduling Order that is required by the Federal Rules of Civil Procedure. Therefore, Plaintiff's motion is **denied**.

## BACKGROUND

 Plaintiff Jonella Tesone initiated this lawsuit on August 31, 2017. ECF No. 1. Her Complaint brought three claims for relief: (1) disability discrimination under the American with Disabilities Act, 42 U.S.C. § 12101 et seq., (2) common law interference with contract and prospective business advantage, and (3) common law intentional infliction of emotional distress.

*See* Compl. ¶¶ 33–53, ECF No. 1.  On February 12, 2018, I dismissed the third claim in its entirety

and the second claim as it was asserted against then-Defendant Pam Nocerino.  *See* ECF No. 25.

On April 9, 2018, the parties stipulated to the dismissal of then-Defendant Kelly Bruce, *see* ECF

No. 29, which also eliminated the second claim, leaving only the disability discrimination claim.

On November 21, 2017, I issued the Scheduling Order.  ECF No. 17.  Relevant here, that Order

set the deadlines for the amendment of pleadings as January 22, 2018, and affirmative expert

disclosure as  February 5, 2018.  *See id.* ¶ 9(a), (d)(3).  The parties then proceeded with discovery.

The quiet nature of the case changed dramatically on November 2, 2018, when Plaintiff

filed two motions seeking to amend the Scheduling Order to extend the period for designating

expert witnesses.  *See* ECF Nos. 49–50.  In these motions, Plaintiff's counsel,  Joseph Whitcomb,

represented that he had not designated an expert witness to testify to Plaintiff's disability.  Mr.

Whitcomb then candidly conceded that this failure would almost certainly prejudice his client's

case, and he sought to amend the Scheduling Order to permit him to designate such an expert.  He

also disclosed another problem.  Mr. Whitcomb conceded that Defense counsel had made him

aware of the error in March of 2018.  ECF No. 50 at 2.  At that time, Mr. Whitcomb emailed

opposing counsel and told him that "I expect to file a motion for the enlargement of time to appoint

and disclose experts."  ECF No. 53.  Mr. Whitcomb did not seek leave to enlarge the time until

November.  Mr. Whitcomb now concedes that proceeding on the only existing claim without the

benefit of expert testimony "would almost certainly be fatal to the Plaintiff's case."  ECF No. 50

at 3.

At the November 8, 2018 Final Pretrial Conference, I denied the motions for leave to

extend the expert deadlines, concluding that Plaintiff could not demonstrate the "good cause"

necessary to amend the Scheduling Order under Rule 16(b)(4).  Now before me is Plaintiff's

Motion to File an Amended Pleading.  ECF No. 54.  In the Motion, Plaintiff seeks to add two claims that would not require the testimony of an expert witness: (1) an ADA claim based on a perceived disability, and (2) retaliation in violation of the ADA.  Unfortunately, there is no material difference in the delay to bring these claims and the failure to designate an expert witness. Therefore, as I will discuss below, I deny the motion.

## DISCUSSION

Because Plaintiff seeks leave to amend her complaint after the Scheduling Order's deadline for amendment of pleadings, *see* Scheduling Order ¶ 9(a), Plaintiff's motion implicates both Rules 15 and 16.  Rule 15(a)(2) states that after the deadline for amending a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Rule 16(b)(4) dictates that "[a] schedule may be modified only for good cause and with the judge's consent."

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).  As I already indicated, I find that I can end this inquiry at step one.  *Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2015 WL 1499864, at *3 (D. Colo. Mar. 27, 2015) ("If [a] [p]laintiff fails to show good cause under Rule 16(b)(4), there is no need for the Court to move on to the second step of the analysis, i.e., whether [the] [p]laintiff has satisfied the requirements of Rule 15(a).").

Rule 16(b) requires a showing of "good cause" to amend the scheduling order:

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997)). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. However, "[a] litigant's failure to assert a claim *as soon as he could have* is properly a factor to be considered in deciding whether to grant leave to amend." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1200 (D. Colo. 2017) (emphasis added). "To demonstrate good cause pursuant to Rule 16, the moving party must . . . 'provide an adequate explanation for any delay.'" *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014) (quoting *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)); *D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of Am.*, 281 F.R.D. 627, 630 (D. Colo. 2012). Further, a court may consider the procedural posture of a case in a Rule 16(b) "good cause" analysis. *See Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011).

To support permitting the amendment, Plaintiff focuses much of her argument on the fact that Defendant will not be significantly prejudiced. Mot. 4 (arguing prejudice to the Defense is less significant, because "the additional claims do not alter the theory of the case nor bring forth legal issues that the Defense isn't already on notice"). However, prejudice to the defendant is irrelevant to a "good cause" analysis under Rule 16(b)(4). *Lariviere, Grubman & Payne, LLP v. Phillips*, No. 07-cv-01723-WYD-CBS, 2010 WL 2844361, at *11 (D. Colo. July 15, 2010) ("[T]he

4

lack of prejudice to the non-moving party does not establish 'good cause' for purposes of Rule 16(b)(4).").  Plaintiff also makes an argument based in equity, that permitting the amendment would allow Plaintiff's grievance to be evaluated on the merits.  Mem. of Law in Supp. of Mot. to Amend 8, ECF No. 54-4 ("Ms. Tesone should be afforded to test the merits of her claim, despite the mistake of her legal counsel.").  However, attorney error also does not constitute "good cause." *Anthony v. City & County of Denver*, No. 16-cv-01223-RM-NYW, 2018 WL 4203911, at *5 (D. Colo. Sept. 4, 2018) ("[A]ttorney error may constitute 'excusable neglect' under Rule 6, but does not constitute good cause under Rule 16(b)(4)[.]" (quoting *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015))).

Instead, Rule 16(b)(4) "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Colo. Visionary Acad.*, 194 F.R.D. at 687.  Here, I see no reason why Plaintiff could not have asserted her claims in the Complaint.  Plaintiff's Complaint alleges she "alerted [Defendant] on her date of hire that she had lifting limitations due a previous back injury." Compl. ¶ 1.  This allegation belies any argument that prior to discovery in this case,  Plaintiff did not know the Defendant  regarded her as disabled.

I must deny Plaintiff's request to add a retaliation claim for a bright-line reason—this proposed amendment is futile.  Refusing leave to amend is justified if the proposed amended claim would be futile. *JDK LLC v. Hodge*, No. 15-cv-00494-NYW, 2015 WL 5766466, at *1 (D. Colo. Oct. 2, 2015).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

Plaintiff's proposed retaliation claim is futile, because she did not exhaust her administrative remedies. "A plaintiff must exhaust h[er] administrative remedies before bringing suit under Title VII . . . ." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1049 (10th Cir. 1997). "The purpose behind the requirement of exhausting a claim with the EEOC is two-fold: 'protect[ing] employers by giving them notice of the discrimination claims being brought against them, [and] providing the EEOC with an opportunity to conciliate the claim.'" *Johnson v. Sears, Roebuck & Co.*, No. 14-cv-01119-MEH, 2014 WL 5293559, at *4 (D. Colo. Oct. 16, 2014) (alterations in original) (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)). "A [plaintiff's] failure to check a particular box creates a presumption that a claimant is not making a claim on that ground." *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 672 (10th Cir. 2014); *Garcia v. Univ. of Kan. Hosp.*, No. 12-2792-KHV, 2013 WL 4482696, at *5 (D. Kan. Aug. 21, 2013) ("A plaintiff's failure to check the appropriate box on the administrative charge form for the type of discrimination alleged creates a presumption that he or she is not asserting claims represented by boxes not checked."). However, "the presumption can be rebutted by the claimant's narrative statement." *Asebedo*, 559 F. App'x at 672.

Here, Plaintiff did not check the retaliation box in her EEOC charge, *see* ECF No. 60-1 at 1, and nothing in the narrative statement rebuts the resulting presumption that she is "not making a claim on that ground," *Asebedo*, 559 F. App'x at 672. Therefore, this proposed amendment is futile, and I will not grant leave to amend.

## CONCLUSION

Because I find that Plaintiff has not shown good cause to modify the Scheduling Order under Rule 16(b)(4), Plaintiff's motion [filed November 7, 2018; ECF No. 54] is **denied**.

Dated at Denver, Colorado this 17th day of January, 2019.

6

43

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

Appellate Case: 19-1026   Document: 010110165405   Date Filed: 05/08/2019   Page: 51

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02101-MEH

JONELLA TESONE,

     Plaintiff,

v.

EMPIRE MARKETING STRATEGIES,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Defendant Empire Marketing Strategies seeks summary judgment on the single remaining claim Plaintiff Jonella Tesone asserts in her Complaint, disability discrimination in violation of the Americans with Disabilities Act ("ADA"), as amended.  42 U.S.C. §§ 12101 et seq.  Because Plaintiff will not be able to present evidence to establish a prima facie case for disability discrimination, I **grant** the motion.

## BACKGROUND

### I.    Procedural History

     Plaintiff filed the operative Complaint on August 31, 2017.  Compl., ECF No. 1.  In the Complaint, Plaintiff asserted three claims for relief: (1) disability discrimination in violation of the ADA, (2) interference with a contract and prospective business advantage, and (3) intentional infliction of emotional distress.  *See id.* ¶¶ 33–53.  On February 12, 2018, I dismissed the third claim in its entirety and the second claim as it was asserted against then-Defendant Pam Nocerino.  *See* ECF No. 25.  On April 9, 2018, the parties stipulated to the dismissal of then-Defendant Kelly

1

Bruce, *see* ECF No. 29, which also eliminated the second claim, leaving only the disability discrimination claim.  Defendant now seeks summary judgment on the remaining claim, arguing that Plaintiff has failed to present the testimony of an expert to testify to her disability.  Therefore, Defendant argues, Plaintiff will not be able to make a prima facie case at trial.  As I will discuss below, the Tenth Circuit requires the testimony of an expert to establish a prima facie case of a disability under the ADA.  Plaintiff has not presented this testimony.  Therefore, she cannot meet the prima facie case for her claim, and it must therefore fail.

## LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (alteration in original); *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

Here, Defendant argues summary judgment on Plaintiff's lone remaining is appropriate "by showing that the [she] does not have enough evidence to carry [her] burden of persuasion at trial." *Trainor*, 318 F.3d at 979. It argues Plaintiff cannot present evidence sufficient to make a prima facie case of disability discrimination under the ADA. Specifically, Defendant argues

Plaintiff will not be able to demonstrate at trial that she is disabled as that term is defined in the ADA.

Because Plaintiff does not argue that she has presented direct evidence of discrimination, the legal analysis for her ADA claim begins with the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir. 1999) ("ADA cases without direct evidence of discrimination generally are evaluated under the burden-shifting framework established in *McDonnell Douglas* . . . ."). Under that framework the plaintiff "bears the initial burden of establishing a prima facie case of discrimination." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011). "If [the] plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003). Then, "[i]f [the] defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual." *Id.*

The first step of the analysis requires Plaintiff to establish a prima facie case of discrimination. This burden is "not onerous." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). To do so, she must show that "at the time [s]he was fired, (1) [s]he was a disabled person as defined by the ADA; (2) [s]he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) [s]he was fired because of his disability." *Carter*, 662 F.3d at 1142. "This case turns on the first prong—whether [Plaintiff] is a disabled person." *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014).

"The ADA defines a 'disability' as either '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such

an impairment; or (C) being regarded as having such an impairment.'" *Johnson v. Weld County*, 594 F.3d 1202, 1218 (10th Cir. 2010) (quoting 42 U.S.C. § 12102(2)).  Here, Plaintiff only brings a claim based on actual disability.  Compl. ¶ 34, ECF No. 1 ("At the time of her termination, Ms. Tesone was a qualified individual with one disability of lower back pain.).  "A person is 'disabled' under the ADA if [s]he has 'a physical or mental impairment that substantially limits one or more major life activities.'" *Carter*, 662 F.3d at 1142 (quoting 42 U.S.C. § 12102(1)(A)).  To meet this definition, "a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Id.* (quoting *Berry v. T–Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007)).

To establish a prima facie case, "[the plaintiff] ha[s] to present sufficient evidence to prove (1) that she has a condition . . . (2) that substantially limits at least one . . . major life activit[y]." *Felkins*, 774 F.3d at 651.  Here, Plaintiff cannot do so, because she has "presented no expert medical evidence that any of her major life activities have been substantially limited by" her alleged disability.  *Id.* at 648.

*Felkins* is on point.  In that case, the plaintiff brought a disability discrimination claim against her former employer under the ADA.  *Id.* at 648–49.  However, the only evidence she presented of her disability was "a Family and Medical Leave Act (FMLA) document . . . indicating that [the plaintiff] had received hospital care but did not have a chronic condition," and a note from physician assistant "stating only 'Return to work full duty [on a certain date].'" *Id.* at 648.  She also "submitted a declaration under penalty of perjury asserting that her [alleged disability] caused her [injury]."  *Id.* at 649.  The Tenth Circuit held that the plaintiff did not "present sufficient evidence to prove . . . that she has a condition . . . that substantially limits a[] . . . major life activit[y]."  *Id.* at 651.  It did so, because the plaintiff "presented no expert medical evidence" of

5

the alleged disability. *Id.* at 648. Considering this element of the prima facie case was lacking, the Tenth Circuit affirmed the district court's decision to grant summary judgment to the defendant. *Id.* at 653.

Here, Defendant argues summary judgment is appropriate, because "Plaintiff offers no expert report or other admissible evidence establishing that her impairment caused limitations to perform a major life activity, and the deadline to do so passed long ago." Def.'s Mot. for Summ. J. 7, ECF No. 35. I agree. Plaintiff's case suffers from the same deficiency as the plaintiff's case in *Felkins*.

In an effort to avoid this conclusion, Plaintiff attempts to distinguish *Felkins* by arguing that she has obtained a doctor's note describing the disability and associated restriction. However, this note is not accompanied with an affidavit and therefore is inadmissible hearsay. *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("As a general matter . . . unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment."); *Wilkerson v. Schirmer Eng'g Corp.*, No. 04CV00258 WDM/OES, 2006 WL 228818, at *6 (D. Colo. Jan 30, 2006) (finding an unsworn letter from a doctor was "inadmissible hearsay, and should not be considered"). As such, Plaintiff is left only with her own statements to her disability, and these statements are not sufficient to establish that she is disabled. "Such lay evidence . . . is inadmissible in court and thus cannot be used to oppose summary judgment." *Felkins*, 774 F.3d at 651. She cannot make a prima facie case, and summary judgment is appropriate.

Appellate Case: 19-1026     Document: 010110165405     Date Filed: 05/08/2019     Page: 57

## **CONCLUSION**

Because Plaintiff cannot make a prima facie case of her disability claim under the ADA, her claim must fail.  Accordingly, Defendant's Motion for Summary Judgment [filed July 20, 2018; ECF No. 35] is **granted**.  The Clerk of the Court is **ORDERED** to close this case.

Entered and dated at Denver, Colorado, this 17th day of January, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:17-cv-02101-MEH

JONELLA TESONE,

                Plaintiff,

v.

EMPIRE MARKETING STRATEGIES,

                Defendant.

## JUDGMENT

PURSUANT to and in accordance with Fed. R. Civ. P. 58(a) and the orders entered in this case, FINAL JUDGMENT is entered.

Pursuant to the [#63] Order granting [#35] Defendant's Motion for Summary Judgment, which order is incorporated by reference, it is

ORDERED that Plaintiff's case is dismissed in its entirety.   It is

FURTHER ORDERED that Judgment shall be entered for the defendant, Empire Marketing Strategies.

DATED at Denver, Colorado, this 17th day of January 2019.

FOR THE COURT:
Jeffrey P. Colwell, Clerk


By *s/Molly Davenport*
   Molly Davenport
   Deputy Clerk